[Cite as *State v. McNichols*, 2020-Ohio-2705.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                    :

    Plaintiff-Appellee,         :         Case No.   19CA3681

    vs.                              :

PHILIP L. MCNICHOLS,         :         DECISION AND JUDGMENT ENTRY

    Defendant-Appellee.       :

_____

APPEARANCES:

James R. Kingsley, Circleville, Ohio, for appellant.

Jeffrey C. Marks, Ross County Prosecuting Attorney, and Pamela C. Wells, Assistant Ross County Prosecuting Attorney, Chillicothe, Ohio, for appellee.

_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:   4-24-20
ABELE, J.

{¶ 1} This is an appeal from a Ross County Common Pleas Court judgment. After the trial court found Philip L. McNichols, defendant below and appellant herein, not guilty of assault by reason of insanity, the court determined that appellant is a mentally ill person subject to court order and placed appellant on conditional release.

{¶ 2} Appellant assigns the following error for review:

> "DEFENDANT SHOULD HAVE BEEN DISCHARGED AFTER
> HIS FINDING OF NGRI."

{¶ 3} On October 5, 2018, a Ross County grand jury returned an indictment that charged appellant with assault in violation of R.C. 2903.13. Appellant later entered a plea of not guilty

by reason of insanity and asserted that the assault occurred during a psychotic episode that he experienced after he received drugs for a medical condition. In particular, appellant alleged that the drugs he received caused him to hallucinate, and that his hallucination caused him to attack a police officer.[1]

{¶ 4} On February 21, 2019, the trial court found appellant not guilty by reason of insanity and ordered an evaluation to determine whether clear and convincing evidence exists to show that appellant is (1) a mentally ill person subject to court order, or (2) is a person with an intellectual disability subject to court ordered institutionalization.

{¶ 5} At a later hearing, the parties stipulated to the admission into evidence of Dr. Daniel D. Hrinko's forensic evaluation. Dr. Hrinko opined that appellant "cannot be considered a person who is mentally ill and subject to hospitalization. His only enduring mental health diagnosis is that of Major Depressive Disorder with no evidence of psychotic features and a substance use disorder which is the result of his extensive history of abusing mood altering substances over many years." Dr. Hrinko continued: "The brief psychotic reaction that [appellant] experienced at the time of the instant offense described his state at and around the time of the instant offense and does not constitute an enduring diagnosis that could qualify him as an individual subject to hospitalization as defined in the Ohio Revised Code." Dr. Hrinko opined that if "the court find[s] that [appellant] is an individual subject to hospitalization and that court supervision should continue," then the doctor recommends that the court place appellant

---

[1] We observe that the parties' briefs include additional facts obtained from various exhibits that were apparently admitted during the court proceeding to determine whether the court should find appellant not guilty by reason of insanity. None of those exhibits have been transmitted as part of the appellate record, however. Instead, the only exhibit contained in the record before us is the forensic evaluation admitted during the dispositional proceeding.

"on conditional release status within the community."  The doctor also observed that appellant has been complying with treatment recommendations, appears to be benefitting from receiving treatment, and should continue to receive treatment "for the foreseeable future."

{¶ 6} At the hearing to determine the disposition, the state asserted that under R.C. 5122.01(B)(4) appellant qualifies as an mentally ill person subject to court order.  The state argued that the forensic report notes that appellant "has a long history of abusing mood altering substances" and that appellant "reported a long history of panic attacks, mood swings[, and] period[s] of darkness in which he would use alcohol and other drugs."  The state alleged that until the recent episode, appellant failed to effectively treat his disorder and undermined treatment because he continued to abuse alcohol or drugs.  The state additionally claimed that appellant will benefit from continued monitoring.

{¶ 7} At the conclusion of the hearing, the trial court agreed with the state.  The court noted that Dr. Hrinko opined that appellant is not a mentally ill person subject to hospitalization, but further noted that the statute does not use the term "mentally ill person subject to hospitalization."  Instead, the statute uses the phrase "mentally ill person subject to court order." The court determined that appellant is a mentally ill person subject to court order because, as the court observed, the forensic evaluation concluded that appellant "suffers from major depressive disorder" and that appellant thus is "clearly mentally ill."  The court also found part of the forensic report to be "very dismissive" as the report indicates that the incident that led to the assault charge "was not of [appellant's] doing, but the result from an adverse drug reaction due to drugs injected to him by Adena Hospital in treating his heart attack."  The court believed that appellant "is shifting the blame from himself to others."

{¶ 8} The trial court further observed that appellant "has an extensive history of using methamphetamine and cocaine, and abusing them." Thus, the court (1) found appellant to be a mentally ill person subject to court order; (2) ordered appellant to continue mental health counseling; and (3) placed appellant on conditional release status within the community. This appeal followed.

{¶ 9} In his sole assignment of error, appellant asserts that the trial court should have ordered him discharged after it found him not guilty by reason of insanity. Appellant contends that Dr. Hrinko's report indicates that appellant is not mentally ill and does not qualify for hospitalization. Thus, appellant argues, because he is not a mentally ill person subject to court ordered hospitalization, the court must unconditionally discharge him.

{¶ 10} In general, appellate courts will not disturb a trial court's finding that a person is a mentally ill person subject to court order unless the court's decision is against the manifest weight of the evidence. *In re Kister*, 194 Ohio App.3d 270, 2011-Ohio-2678, 955 N.E.2d 1029 (4th Dist.), ¶ 21, citing *In re K.W.*, Franklin App. No. 06AP–731, 2006–Ohio–4908, 2006 WL 2708460, ¶ 6. When an appellate court reviews whether a trial court's decision is against the manifest weight of the evidence, the court "'"weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [fact-finder] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed * * *."'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A reviewing court may find a trial court's decision against the manifest weight of

the evidence only in the "'exceptional case in which the evidence weighs heavily against the [decision].'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983); *accord State v. Lindsey*, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000). Moreover, when reviewing evidence under the manifest weight of the evidence standard, an appellate court generally must defer to the fact-finder's credibility determinations. *Eastley* at ¶ 21. As the *Eastley* court explained:

> "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment must be made in favor of the judgment and the finding of facts. * * *
> If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'"

*Id.*, quoting *Seasons Coal Co.*, 10 Ohio St.3d at 80, fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978). Thus, "'[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court.'" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24, quoting *Seasons Coal* at 81. Consequently, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012-Ohio-1282, ¶ 24; *accord State v. Howard*, 4th Dist. Ross No. 07CA2948, 2007-Ohio-6331, ¶ 6 ("We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and weight.").

{¶ 11} We additionally note that "'[a] finding of an error in law is a legitimate ground for reversal.'" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24,

quoting *Seasons Coal* at 81. Therefore, appellate courts will generally defer to the fact finder's credibility determinations, but not defer on matters that involve questions of law.

{¶ 12} R.C. 2945.40(A) sets forth the procedure that a trial court must follow after it finds a person not guilty by reason of insanity.[2] The statute requires the court to "conduct a full hearing to determine whether the person is a mentally ill person subject to court order or a person with an intellectual disability subject to institutionalization by court order." If the court does not find "clear and convincing evidence that the person is a mentally ill person subject to court order or a person with an intellectual disability subject to institutionalization by court order, the court shall discharge the person * * *." R.C. 2945.40(E). If, however, "the court finds by clear and convincing evidence that the person is a mentally ill person subject to court order, the court shall commit the person either to the department of mental health and addiction services for treatment in a hospital, facility, or agency as determined clinically appropriate by the department of mental

---

[2] R.C. 2901.01(A)(14) explains when a person is not guilty by reason of insanity:

> A person is "not guilty by reason of insanity" relative to a charge of an offense only if the person proves, in the manner specified in section 2901.05 of the Revised Code, that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts.

We further observe that a person may avoid criminal culpability for conduct resulting from that person's involuntary intoxication. *State v. Williamson*, 6th Dist. Wood No. WD-18-049, 2019-Ohio-4380, 2019 WL 5491722, ¶ 47, citing *State v. Johnston*, 2d Dist. Montgomery No. 26016, 2015-Ohio-450, ¶ 33 (stating that "involuntary intoxication is an affirmative defense"). In the case at bar, however, appellant did not raise an "involuntary intoxication" defense, but instead raised the "not guilty by reason of insanity" defense. Appellant's appellate counsel, however, argued that appellant actually suffered from "temporary insanity" that emanated from the hospital's treatment and choice of medication. Ohio, however, does not recognize the defense of "temporary insanity." In *State v. Folmer*, 117 Ohio St.3d 319, 2008-Ohio-936; 883 N.E.2d 1052, the Ohio Supreme Court reaffirmed and restated the principle that Ohio does not recognize the partial defense of diminished capacity (when a defendant does not assert an insanity defense, it is well settled that he may not offer expert testimony in an effort to show that he lacked mental capacity to form the specific mental state required for a particular crime). See, also, *State v. Wilcox*, 70 Ohio St.2d 182, 436 N.E.2d 523, 1982; *State v. Heising,* 6th Dist. Fulton No. F-08-005, 2008-Ohio-6803.

health and addiction services or to another medical or psychiatric facility, as appropriate." R.C. 2945.40(F).

{¶ 13} Therefore, we observe that in light of the foregoing, the state must establish, by clear and convincing evidence, that a person is a mentally ill person subject to court order. *E.g., Foucha v. Louisiana*, 504 U.S. 71, 86, 112 S.Ct. 1780, 1788, 118 L.Ed.2d 437 (1992). Clear and convincing evidence is evidence that "will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. The clear-and-convincing standard requires a higher degree of proof than "a preponderance of the evidence," but less than "evidence beyond a reasonable doubt." *State v. Ingram*, 82 Ohio App.3d 341, 346, 612 N.E.2d 454 (1992). "Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990).

{¶ 14} As relevant in the case at bar, R.C. 5122.01(B)(4) defines a "[m]entally ill person subject to court order" as follows:

a mentally ill person who, because of the person's illness:

\* \* \* \*

(4) Would benefit from treatment for the person's mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or the person[.]

We further note that R.C. 5122.01(A) defines "mental illness" as "a substantial disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life." *See State v.*

*Decker*, 10th Dist. Franklin No. 16AP-684, 2017-Ohio-4266, 2017 WL 2555360, ¶ 26 (explaining that a court that is construing R.C. 5122.01(B) "must abide by the plain meaning of the definition of mental illness as set forth in R.C. 5122.01(A)").

{¶ 15} Consequently, in order to subject a person to a court order under R.C. 5122.02(B)(4), the state must establish, by clear and convincing evidence, all of the following: (1) the person is mentally ill; (2) the person would benefit from treatment for the person's mental illness; (3) the person needs treatment; and (4) the person manifests behavior that creates a grave and imminent risk to substantial rights of others or the person.   A prerequisite finding, therefore, is that the person has a mental illness as defined in R.C. 5122.01(A).   *See generally State v. Welch*, 125 Ohio App.3d 49, 53, 707 N.E.2d 1133 (11th Dist.1997) (outlining essential elements state must prove in order to involuntarily commit a mentally ill person and holding that state must prove person suffers from mental illness as defined in R.C. 5122.01(A)).

{¶ 16} In 1984, the Ohio Supreme Court interpreted the former version of R.C. 5122.01(B)[3] to mean that, before the state could involuntarily hospitalize a mentally ill person,

---

[3] The statute that the *Burton* court reviewed stated as follows:

(B) "Mentally ill person subject to hospitalization by court order" means a mentally ill person who, because of his illness:
(1) Represents a substantial risk of physical harm to himself as manifested by evidence of threats of, or attempts at, suicide or serious self-inflicted bodily harm;
(2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm, or other evidence of present dangerousness;
(3) Represents a substantial and immediate risk of serious physical impairment or injury to himself as manifested by evidence that he is unable to provide for and is not providing for his basic physical needs because of his mental illness and that appropriate provision for such needs cannot be made immediately available in the community; or
(4) Would benefit from treatment in a hospital for his mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or himself.

the state must establish that the person "represent[s] a substantial risk of physical harm to himself or other members of society at the time of the commitment hearing." *In re Burton*, 11 Ohio St.3d 147, 149, 464 N.E.2d 530 (1984). At the time of the *Burton* decision, R.C. 5122.01(B) used the phrase "mentally ill person subject to hospitalization." In 2014, the legislature amended the statute to read "mentally ill person subject to court order." 2014 Ohio Laws File 131 (Am. Sub. S.B. 43). Additionally, when the court decided *Burton*, R.C. 5122.01(B)(5) had not yet been enacted.[4] In all other respects, the present-day version of the statute is similar to the statute that the *Burton* court reviewed. Thus, although the present-day version of R.C. 5122.01(B) uses "mentally ill person subject to court order," we nevertheless find *Burton*

---

*Burton*, 11 Ohio St.3d at 149, quoting former R.C. 5122.01(B).

[4] R.C. 5122.01(B)(5) states that a mentally ill person subject to court order means a mentally ill person who:

> (5)(a) Would benefit from treatment as manifested by evidence of behavior that indicates all of the following:
> (I) The person is unlikely to survive safely in the community without supervision, based on a clinical determination.
> (ii) The person has a history of lack of compliance with treatment for mental illness and one of the following applies:
> (I) At least twice within the thirty-six months prior to the filing of an affidavit seeking court-ordered treatment of the person under section 5122.111 of the Revised Code, the lack of compliance has been a significant factor in necessitating hospitalization in a hospital or receipt of services in a forensic or other mental health unit of a correctional facility, provided that the thirty-six-month period shall be extended by the length of any hospitalization or incarceration of the person that occurred within the thirty-six-month period.
> (II) Within the forty-eight months prior to the filing of an affidavit seeking court-ordered treatment of the person under section 5122.111 of the Revised Code, the lack of compliance resulted in one or more acts of serious violent behavior toward self or others or threats of, or attempts at, serious physical harm to self or others, provided that the forty-eight-month period shall be extended by the length of any hospitalization or incarceration of the person that occurred within the forty-eight-month period.
> (iii) The person, as a result of the person's mental illness, is unlikely to voluntarily participate in necessary treatment.
> (iv) In view of the person's treatment history and current behavior, the person is in need of treatment in order to prevent a relapse or deterioration that would be likely to result in substantial risk of serious harm to the person or others.

instructive.   We also point out that other courts have continued to rely upon *Burton* despite the change in language.   *E.g., In re C.J.*, 12th Dist. Butler No. CA2019-01-013, 2019-Ohio-4403, 2019 WL 5543079, ¶ 19; *In re R.T.*, 10th Dist. Franklin No. 17AP-288, 2019-Ohio-618, 2019 WL 852110, ¶ 13; *State v. Rohrer*, 4th Dist. No. 14CA3471, 2015-Ohio-5333, 54 N.E.3d 654, 2015 WL 9305562, ¶ 60.

{¶ 17} We also recognize that the *Burton* court adopted a totality of the circumstances test that courts should use when determining whether a mentally ill person is subject to hospitalization.   *Id.* at 149.   Thus, courts should also use a totality-of-the-circumstances test when determining whether a mentally ill person is subject to court order.   A court must evaluate "[t]he individual's present mental state" in light of "current or recent behavior as well as prior dangerous propensities of the person."   *Id.*   In doing so, a court should consider the following factors:

> (1) whether, in the court's view, the individual currently represents a substantial risk of physical harm to himself or other members of society; (2) psychiatric and medical testimony as to the present mental and physical condition of the alleged incompetent; (3) whether the person has insight into his condition so that he will continue treatment as prescribed or seek professional assistance if needed; (4) the grounds upon which the state relies for the proposed commitment; (5) any past history which is relevant to establish the individual's degree of conformity to the laws, rules, regulations and values of society; and (6) if there is evidence that the person's mental illness is in a state of remission, the court must also consider the medically suggested cause and degree of the remission and the probability that the individual will continue treatment to maintain the remissive state of his illness should he be released from commitment.

*Id.* at 149-150.

{¶ 18} We further note that this court previously held that "[a] person acquitted of a crime by reason of insanity is entitled to release once the acquittee has become sane or is no longer

dangerous." *State v. Trapp*, 4th Dist. Jackson No. 97CA819, 1998 WL 388236, *2, citing *Foucha*, 504 U.S. at 446, and *Jones v. United States*, 463 U.S. 354, 363, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983). We determined a defendant is entitled to discharge when the evidence fails to show the defendant suffers from a mental illness. In *Trapp*, the trial court had revoked the defendant's conditional release after the defendant had been charged with several criminal offenses. A psychologist testified that the defendant was not a mentally ill person subject to hospitalization, but instead suffered from substance abuse disorder and had an antisocial personality. The psychologist additionally opined that the defendant likely would continue to abuse drugs and alcohol and to repeat violent and aggressive behavior towards others due to the defendant's substance abuse problem. The psychologist "acknowledged that as a result of 'character flaws,' i.e., substance abuse and antisocial personality, the [defendant] may pose a substantial risk to himself or others if released, but poses no risk as a result of a mental illness." *Id.* at *1. The trial court nonetheless found the defendant to be a mentally ill person subject to hospitalization. The defendant appealed and this court (1) reversed the trial court's judgment, and (2) pointed out that the expert witnesses testified that the defendant was not mentally ill as defined in R.C. 5122.01(A). Additionally, a forensic review team "noted that [the defendant] had not demonstrated symptoms of a substantial disorder of thought, mood, perception, orientation, or memory." We determined that the evidence failed to show that the defendant's "substance abuse and antisocial personality disorders * * * meet the statutory definition of mental illness." We concluded: "Disregarding all of the medical testimony that a person is no longer mentally ill in favor of evidence of past heinous acts, and concluding that the person is mentally

ill, does not meet the statutory standards for commitment." *Id.* at *2. We thus reversed the trial court's judgment that found the defendant to be a mentally ill person subject to hospitalization.

{¶ 19} In *State v. Welch*, *supra,* the appellate court similarly disagreed with a trial court's assessment that a defendant with a substance abuse disorder and antisocial personality was a mentally ill person subject to hospitalization. In *Welch*, the defendant experienced a psychotic episode after he received drugs for medical treatment and tragically stabbed to death a teenage boy. The court later found the defendant not guilty by reason of insanity and committed him to a mental hospital. Approximately ten years after the stabbing death, the defendant sought release from his commitment. The state opposed release, and the trial court granted the state's request for continued commitment.

{¶ 20} On appeal, the court determined that the evidence failed to show that the defendant's substance abuse disorder or antisocial personality disorder constituted a mental illness as defined in R.C. 5122.01(A). The court noted that expert witnesses testified that the defendant did not experience any hallucinations and had not shown any signs of the same psychosis that caused him to stab the teenage boy nearly ten years earlier. The court also determined that the defendant's "persistent" substance abuse disorder was not so severe as to constitute a substantial disorder of thought within the meaning of R.C. 5122.01(A). The court recognized the expert witnesses' concerns that the defendant may not seek adequate treatment for his problems if released from confinement, but concluded that "continuing to confine a person suffering from an antisocial personality disorder who does not meet the statutory definition of mental illness on the ground that he may be dangerous violates due process. Should [the defendant] abuse alcohol, traffic in marijuana, or commit an assault or other violent crime when

released, it will be a matter for law enforcement officials, not the mental health community." *Id.* at 59 (citations omitted). The court thus reversed the trial court's judgment that granted the state's request for continued commitment.

{¶ 21} In *In re C.J.*, 12th Dist. Butler No. CA2019-01-013, 2019-Ohio-4403, 2019 WL 5543079, ¶ 21, the court determined that the defendant's diagnosis of major depressive disorder qualified as a mental illness under R.C. 5122.01(A) and that the defendant was a mentally ill person subject to court order. The court concluded that the state presented adequate clear and convincing evidence to establish that the defendant was "a mentally ill person, who, because of his illness, would benefit from treatment and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of himself or others." *Id.* at ¶ 20. In reaching its conclusion, the court observed that the medical expert testified that the defendant's "depression was a substantial disorder of mood which impaired his judgment and behavior." *Id.* at ¶ 21. Additionally, the court found that the evidence showed that the defendant "has a substantial mental disorder which grossly impairs his judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life." *Id.* The court noted that, at the time of the hearing, the defendant had been "experiencing a significant amount of stress" and had "difficulty sleeping and attending to his basic care." *Id.* The court also found that the defendant's behaviors illustrated his need for treatment. The court determined that the defendant's conduct created a grave and imminent risk that he would be unable to manage the stressors in his life such as his pending divorce and custody matters. The court concluded that the defendant's "inability to manage the symptoms of his depression would have only continued without intervention." *Id.* at ¶ 24. We also note that the court recognized

that the facts presented a close case. *Id*. The court, however, deferred to the trial court's assessment of the defendant's condition and his need for treatment. *Id.*

{¶ 22} Similarly, in *State v. Werner*, 168 Ohio App.3d 272, 2006-Ohio-3866, 859 N.E.2d 986 (6th Dist.), the court determined that evidence that the defendant suffered from a mood disorder and "polysubstance dependence" supported the trial court's finding that the defendant was a mentally ill person subject to hospitalization under the former version of R.C. 5122.01(B). *Id.* at ¶ 16. The court noted that the defendant's "own report of the offense that led to these proceedings was that he had become delusional under the influence of drugs and alcohol" and that one expert "opined that appellant could 'easily relapse into a psychotic or mood disorder' if he returned to taking drugs." *Id.* The court further pointed out that "whenever [the defendant] is exposed to the least permissive atmosphere, he returns to drugs" and "he minimizes his problem, suggesting little insight and a 'high risk * * * of relapse.'" *Id.* We also recognize that other courts have upheld involuntary commitments under R.C. 5122.01(B)(4) when the individual's mental illness resulted in paranoia, an inability to gain insight into her illness, and a "rapid emotional escalation when her paranoid beliefs were challenged," *In re Mental Illness of Vass*, 9th Dist. Summit No. 19270, 2000 WL 327221, *4, or when the mental illness caused the individual to have a "clear inability to deal with reality, to interact with others, and to meet with ordinary aspects of life such as caring for his basic needs." *In re Kuehne*, 12th Dist. Butler No. CA98-09-192, 1999 WL 527755, *8.

{¶ 23} In the case sub judice, we initially observe that it appears that the evidence transmitted to this court on appeal is limited to the forensic evaluation. None of the parties presented any in-court testimony regarding appellant's present mental state, and the only

evidence in the record (Dr. Hrinko's report) states that appellant is not a mentally ill person and not subject to hospitalization. Moreover, it appears that Dr. Hrinko's evaluation does not conclude that appellant has a mental illness as defined in R.C. 5122.01(A). Although Dr. Hrinko diagnosed appellant with major depressive disorder and substance abuse disorder, Dr. Hrinko's report does not indicate that either disorder causes appellant to experience "a substantial disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life." Rather, Dr. Hrinko stated that appellant has an "enduring mental health diagnosis * * * of Major Depressive Disorder with no evidence of psychotic features and a substance abuse disorder which is the result of his extensive history of abusing mood altering substances over many years." It does not appear that Dr. Hrinko stated that appellant has a mental illness as defined in R.C. 5122.01(A). Dr. Hrinko also reported that the notes from appellant's "psychiatric appointments indicate that he continues to use his medications appropriately and that they are effective. It is reported his symptoms of anxiety are well controlled as is his depression. It was determined he no longer needed psychiatric services and that he should continue his mental health counseling while relying on his primary care physician for his antidepressant medications." Dr. Hrinko thus concluded that appellant is not mentally ill and not subject to hospitalization.

{¶ 24} The trial court, however, apparently disagreed with Dr. Hrinko's diagnosis that appellant is not mentally ill and believed that appellant's major depressive disorder diagnosis shows that appellant is mentally ill. At one point during the hearing, the court rejected appellant's counsel's assertion that appellant is not mentally ill and stated: "It says in the report

that he suffers from major depressive disorder. He's clearly mentally ill." Appellant's counsel suggested that in order to find appellant a mentally ill person subject to court order, the court must find that appellant is "some how * * * a danger to himself or others." The court, however, discredited Dr. Hrinko's opinion that appellant is not mentally ill based upon Dr. Hrinko's further statement that appellant is not subject to hospitalization, but noted that the statute does not require the court to find that the person is mentally ill and subject to hospitalization. Instead, the court stated, the statute requires a court to find that a person is a mentally ill person subject to court order.

{¶ 25} After our review, and in light of the state of the record before us, we believe it is unclear whether the trial court applied the correct legal standard before it found appellant to be a mentally ill person subject to court order. Although the court correctly recognized that the statute does not require a finding that the person is subject to hospitalization, the language the court used during the hearing and in its judgment entry does not indicate that the court first considered whether appellant has a mental illness as defined in R.C. 5122.01(A). Instead, the court's language suggests that appellant's mental health diagnosis of major depressive disorder automatically establishes that he suffers from a mental illness as defined in R.C. 5122.01(A). Moreover, it appears that the trial court did not indicate that either of appellant's mental health diagnoses (major depressive disorder or substance abuse disorder) shows that appellant has a "substantial disorder of thought, mood, perception, orientation, or memory that grossly impairs [his] judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life." R.C. 5122.01(A). Additionally, we have found nothing in the record submitted on appeal

to suggest that either of appellant's mental health diagnoses satisfies the R.C. 5122.01(A) definition of mental illness.

{¶ 26} Accordingly, based upon the foregoing reasons, we reverse the trial court's judgment that found appellant to be a mentally ill person subject to court order and remand this matter so the trial court may consider whether either of appellant's mental health diagnoses constitutes a mental illness as defined in R.C. 5122.01(A), and thus, whether appellant is a mentally ill person subject to court order under R.C. 5122.01(B)(4). We caution, however, that our opinion should not be construed as a comment on the merits of the issue. Instead, the purpose of our remand is to allow the trial court to evaluate whether the evidence supports a finding that appellant suffers from a mental illness as defined in R.C. 5122.01(A). We also again note that the parties apparently submitted additional evidence during the proceeding to determine appellant's criminal culpability for the assault, but none of that evidence has been transmitted to this court on appeal. On remand, the trial court may consider all evidence when it determines whether appellant has a mental illness as defined in R.C. 5122.01(A).

{¶ 27} Accordingly, based upon the foregoing reasons, we sustain appellant's sole assignment of error, reverse the trial court's judgment and remand this matter for further proceedings consistent with this opinion.

JUDGMENT REVERSED AND CAUSE
REMANDED FOR FURTHER PROCEEDINGS
CONSISTENT WITH THIS OPINION.

JUDGMENT ENTRY

It is ordered that the judgment be reversed and the cause remanded for further proceedings consistent with this opinion. Appellant shall recover of appellee the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Hess, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.