[Cite as *State v. Richcreek*, 2021-Ohio-636.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
PAULDING COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                CASE NO.  11-20-03

      v.

DONALD J. RICHCREEK,             O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Paulding County Common Pleas Court
Trial Court No. CR 19 592

Judgment Affirmed

Date of Decision:   March 8, 2021

APPEARANCES:

    *Brian A. Smith* **for Appellant**

    *Joseph R. Burkard* **for Appellee**

**SHAW, J.**

{¶1} Defendant-appellant, Donald J. Richcreek ("Richcreek"), brings this appeal from the October 7, 2020 judgment of the Paulding County Common Pleas Court sentencing him to an indefinite prison term of a minimum of eight years and a maximum of twelve years after Richcreek was convicted in a jury trial of voluntary manslaughter in violation of R.C. 2903.03(A), a first degree felony. The voluntary manslaughter charge carried an attached firearm specification pursuant to R.C. 2941.141(A) and Richcreek was sentenced to a one year prison term for that specification, consecutive to the prison term for voluntary manslaughter. On appeal, Richcreek argues that his conviction for voluntary manslaughter was against the manifest weight of the evidence, and that his sentence was clearly and convincingly contrary to law.

*Background*

{¶2} On September 13, 2019, Richcreek was indicted for murder in violation of R.C. 2903.02(A), an unclassified felony. The indictment included a specification pursuant to R.C. 2941.141(A), that Richcreek had a firearm on or about his person or under his control while committing the offense. It was alleged that Richcreek purposely shot and killed his brother, Anthony, with a .38 special revolver in the early morning hours of August 10, 2019.

{¶3} Richcreek pled not guilty to the charge and proceeded to a jury trial, which was held August 25-27, 2020. Ultimately Richcreek was found not guilty of murder as indicted; however, he was convicted of the lesser-included offense of voluntary manslaughter, a first degree felony, with an attached firearm specification.

{¶4} On October 5, 2020, Richcreek was sentenced to an indefinite prison term of a minimum of eight years and a maximum of twelve years on the voluntary manslaughter conviction, and one year in prison on the firearm specification. Those terms were ordered to be served consecutively. A judgment entry memorializing Richcreek's sentence was filed October 7, 2020. It is from this judgment that Richcreek appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**Because the jury lost its way and created a manifest miscarriage of justice in finding Appellant guilty of Voluntary Manslaughter with a Firearm Specification, Appellant's conviction was against the manifest weight of the evidence.**

**Assignment of Error No. 2**
**Because the trial court did not properly weigh the principles and purposes of sentencing under R.C. 2929.11 or the seriousness and recidivism factors under R.C. 2929.12, Appellant's sentence was not supported by the record.**

*First Assignment of Error*

{¶5} In his first assignment of error, Richcreek argues that his conviction for voluntary manslaughter was against the manifest weight of the evidence.

Standard of Review

{¶6} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, " 'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

Controlling Statute

{¶7} In this case, Richcreek was convicted of voluntary manslaughter in violation of R.C. 2903.03(A), which reads,

> **No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient**

**to incite the person into using deadly force, shall knowingly cause the death of another or the unlawful termination of another's pregnancy.**

Evidence Presented

**{¶8}** Richcreek had a relationship with a woman named Ashley C. for approximately six years. They had two children together.

**{¶9}** Anthony, the victim in this matter, was Richcreek's older brother. During a portion of Richcreek and Ashley's relationship, Anthony spent multiple years in prison in Indiana for aggravated battery and domestic battery. Ashley spoke with Anthony while Anthony was in prison because Richcreek "refused to message [his brother Anthony] back." (Tr. at 289).

**{¶10}** After Anthony was released from prison in early 2019, he and Ashley started a relationship. Richcreek found out about the burgeoning relationship that Ashley was having with his brother and he was angry, so he went outside and "shot up the side of [Ashley's] van." (Tr. at 268). Ashley and Richcreek then split up. Shortly thereafter Ashley and Anthony moved in together. Meanwhile, Richcreek lived in a home owned by Ashley's grandfather.

**{¶11}** After some time passed, Richcreek moved into the residence with Ashley and Anthony, though the reason for Richcreek moving in was disputed in the testimony. Ashley claimed that Richcreek was getting evicted from his residence for not paying his rent and Anthony was adamant that Richcreek was not

going to be left on the street. Richcreek claimed that he wanted to move into Ashley and Anthony's residence because Ashley and Anthony were struggling with their bills and he wanted to help out with the children. Regardless of the reasoning, it is undisputed that Richcreek moved into the residence with Ashley and Anthony.

{¶12} Ashley testified that she was uncomfortable with Richcreek staying in the residence given that Richcreek was her ex, and because Richcreek had "shot up the side of [her] van" after he found out about the relationship between Ashley and Anthony. (Tr. at 269). She testified that her discomfort was well-founded because Richcreek had trouble while staying in the residence. She testified that Richcreek was "upset because he had heard stuff that had been happening between me and Anthony in the bedroom." (*Id*. at 286).

{¶13} Nevertheless, Ashley acknowledged that the relationship between Richcreek and Anthony was not always bad while Richcreek stayed at the residence. She testified that in the days prior to Anthony's death, Richcreek and Anthony had gone to stores together and they had all taken the children for a ride on a separate occasion.

{¶14} On August 9, 2019, Richcreek had wanted to go to "Haspin" for the weekend with Ashley. It was a racing or driving event and Richcreek wanted to drive Ashley's car. According to the testimony, in order for Richcreek to drive the vehicle, Ashley had to be present as the titled owner. Richcreek was upset when

Ashley said she could not go with him because she did not have child care for one of her children.

{¶15} As the day progressed, Ashley and Anthony went to a relative's residence to help her move a couch. Anthony was consuming alcoholic beverages. They later returned to the residence and received a call from Richcreek wherein Richcreek claimed he was being chased by two Ohio State Highway Patrolman. Richcreek testified at trial that he was joking; however, Anthony left the residence to try and find Richcreek. He was not successful and returned to the residence.

{¶16} Late on August 9, 2019, into the early morning hours of August 10, 2019, Richcreek, Ashley, and Anthony were all back at the residence. Richcreek wanted to get cigarettes but either because his vehicle was blocked in, because it was low on gas, or because he wanted Ashley to drive him, Richcreek asked Ashley to take him to get cigarettes. Anthony volunteered to drive instead.

{¶17} Richcreek, Ashley, and Anthony all went outside on the porch. An argument ensued between Richcreek and Anthony. At some point Richcreek pulled out a .38 revolver and shot a white diesel truck twice. He would claim he was just doing it to prove the truck was indestructible.

{¶18} After shooting the truck, Richcreek complained that Ashley's tires needed rotated on her vehicle. Ashley responded that she had not had time to get them rotated. Richcreek replied by saying that it was not Ashley's responsibility

but Anthony's "because he was the man" and she was not supposed to be doing it. (Tr. at 278). An argument ensued between Richcreek and Anthony, and it escalated to shoving. Anthony pushed Richcreek to the ground. Ashley stated she was only about five feet away from the altercation, and she testified that while Richcreek was on the ground, Anthony

> **went down over top of him. [Anthony] told [Richcreek] he didn't want to fight. He don't like to fight. He just didn't want to do it, because they're brothers, and there was no reason to fight him, or something like that.**
>
> **As he was going down over top of him, that is when [Richcreek] reached into the back of him, or into his [own] back, behind him, and pulled out the gun and shot [Anthony] once in the stomach. And as Anthony was coming up, he shot him again through the chest.**

(Tr. at 279-280).

{¶19} Ashley called 911, and that recording was played for the jury. On the call, Ashley initially stated that Anthony had been shot by someone coming onto the property and that the person then took off. She stated that she did not see the vehicle. Dispatch asked Ashley if she knew who shot Anthony again and she said another time that the shooter came up in a car and took off. Later in the call Richcreek can be heard stating that Anthony was shot by someone in a black truck, and that the truck went toward a dirt road. Ashley briefly got off of the call with

-8-

911 to check on her children, but when she returned she began to perform CPR on Anthony until police and first responders arrived.

{¶20} Both Ashley and Richcreek were interviewed at the scene while Anthony was given medical attention. Those interviews were recorded and played for the jury. Ashley initially reiterated that she heard gunshots and saw a truck or an "expedition" leave the area. However, Ashley was interviewed a short time later and she told officers at the scene that Richcreek had shot Anthony after the two men started fighting.

{¶21} Richcreek made an initial statement to police that he heard four shots while he was outside of the residence and that he ducked for cover. He maintained the story that it was a drive-by shooting. After officers spoke with Ashley alone, they confronted Richcreek and he changed his story. At that time, Richcreek told a second story, stating that he got into a fight with Anthony and that Anthony had pulled out a gun. Richcreek claimed that he grabbed Anthony's gun and they wrestled, causing two shots to fire into the truck. Richcreek claimed that afterward, as Anthony was fighting for the gun, Anthony was shot twice at close range, accidentally.

{¶22} Although he claimed Anthony was shot accidently, Richcreek later told Police that he feared for his life and had to shoot Anthony. Richcreek told police that after Anthony was shot, Richcreek had taken the revolver and thrown it

into a nearby pond. He showed them where he had thrown the weapon and the gun was eventually recovered. It was test-fired and found to match the bullets that struck Anthony.

{¶23} Anthony died as a result of multiple gunshot wounds. Richcreek was arrested at the scene and he was interviewed again at the Sheriff's Department. At the Sheriff's Department he changed his story yet again. There, he claimed that after Anthony knocked him to the ground, Richcreek saw Anthony reaching for something at his side or behind his back. Richcreek stated that he knew Anthony carried a gun, so he thought Anthony was reaching for a firearm. Richcreek stated that he carried a gun himself to protect himself and his children from Anthony. Richcreek claimed that when Anthony reached for a potential weapon, Richcreek pulled out his own revolver and shot Anthony. He was adamant in this final interview that he felt his life was in danger, and that he was acting in self-defense.

{¶24} At trial, Ashley admitted that she kept a loaded firearm in the residence. This firearm was recovered inside the home, not on or near Anthony. Ashley affirmatively testified at trial that it was Richcreek who shot Anthony, and that Anthony was not trying to fight with Richcreek any further after Richcreek was knocked to the ground. However, when she was asked why she initially told the story to 911 about a drive-by, Ashley stated that Richcreek made up that story and

said it first. She stated that Richcreek was right beside her when she made the 911 call and she was uncertain at what point he ran off to throw the firearm in the pond.

{¶25} By contrast, Richcreek testified that Ashley came up with the story about the drive-by and he just went along with it. There were some indications from the testimony that Ashley still had an occasional sexual relationship with Richcreek and that Richcreek hoped Ashley would leave Anthony for him. Regardless, Richcreek testified that he was scared of his brother Anthony, who was much bigger and had been affiliated with a gang while in prison for a violent offense.

{¶26} Notably, a neighbor testified at trial that she was awakened by the first two gunshots coming from the residence in question. She stated that after she heard the second two gunshots she called 911 then went outside and learned that Anthony had been shot. She testified that she had observed Anthony being violent with a puppy in the past, and that she had seen Anthony yelling at the children and Ashley. Further, Richcreek and Anthony's other brother—Michael—testified at trial that Anthony had made threats to Richcreek in the past and that Anthony became more violent and temperamental after leaving prison.

{¶27} Following the presentation of all of the testimony and evidence, Richcreek was convicted of voluntary manslaughter with a firearm specification.

Analysis

{¶28} There is no dispute in this case that Richcreek shot and killed his brother Anthony with a .38 revolver. However, on appeal, Richcreek contends that the evidence actually supported a finding that he acted in self-defense rather than a finding that he acted "while under the influence of sudden passion or in a sudden fit of rage * * * brought on by serious provocation." R.C. 2903.03(A). In support of his self-defense claim, Richcreek points to Ashley's testimony wherein Ashley stated that Anthony was shot while he was "going down over top of [Richcreek]." (Tr. at 280). He also points to the testimony of the State's expert witness who indicated that the bullet that hit Anthony in the chest took a "slightly" downward tract. (*Id*. at 328). Richcreek argues that this shows that Anthony was leaning over Richcreek and that Anthony was going to continue his attack on him after Richcreek was knocked to the ground.

{¶29} Further, Richcreek argues there was evidence presented that Anthony had a violent history, that he had violent tendencies, and that Richcreek was in fear of him. In addition, Richcreek stated that he had seen Anthony shoot a firearm on the property before, and there was a firearm recovered from the house. Richcreek maintains that the jury clearly lost its way in this matter because the evidence established that he had reasonable grounds to believe that he was in imminent or immediate danger of great bodily harm or death.

-12-

{¶30} Importantly, the jury in this case was actually instructed on self-defense, per Richcreek's request. Thus the matter was before the jury for consideration, and the jury rejected it. This is particularly significant because the jury was able to see and hear the testimony of all of the witnesses. The jury did not find Richcreek's final story credible, and we will not second-guess a jury's credibility determinations. *State v. Gribben*, 3d Dist. Seneca No. 13-19-50, 2020-Ohio-3083, ¶ 30, citing *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

{¶31} Moreover, the jury had reason to be skeptical of Richcreek's self-defense claim given that Richcreek gave multiple stories about what occurred. He initially attempted to blame the incident on a drive-by shooting, then he attempted to state that Anthony actually pulled a firearm on Richcreek, and later he admitted he had pulled the gun on Anthony and shot Anthony twice. Richcreek's stories shifted when they did not comport with the evidence in front of the officers investigating the matter.

{¶32} Furthermore, there are several key components of properly using deadly force in self-defense, any one of which could have caused Richcreek's claim of self-defense to fail. In order to constitute self-defense, Richcreek could not be at fault in creating the situation giving rise to the death of Anthony, he had to have reasonable grounds to believe he was in imminent danger of death or great bodily harm and the only means of escape was in the use of deadly force, and he could not

violate any duty to retreat or avoid the danger. *See State v. Chavez*, 3d Dist. Seneca No. 13-19-05, 2020-Ohio-426, ¶ 39, *appeal not allowed*, 160 Ohio St.3d 1439, 2020-Ohio-4983, ¶ 39, citing *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 16.

**{¶33}** In this case the jury could have readily determined that the State established beyond a reasonable doubt that Richcreek was at fault in creating the situation, particularly since he was the one who shot the truck twice with his revolver before the altercation occurred, and also because Richcreek sought to antagonize Anthony over not taking proper care of Ashley as he saw it. Additionally, the jury also could have determined that Richcreek did not have a reasonable belief that he was in imminent danger of death or great bodily harm. Although Anthony had a violent history there is no indication he had previously caused great bodily harm to Richcreek, and there was no indication Anthony was carrying a weapon other than Richcreek's self-serving statement that Anthony often did carry a weapon. In fact, contrary to Richcreek's statements, there was testimony from Ashley that Anthony did not want to continue to fight.

**{¶34}** Officers also took pictures of Richcreek that did not show Richcreek had been struck by Anthony as he had claimed. When considering the evidence altogether, there are paths consistent with a jury's finding that the State established beyond a reasonable doubt that Richcreek did not act in self-defense, and we are

bound to give an interpretation consistent with the verdict. *See State v. McNichols*, 4th Dist. No. 19CA3681, 2020-Ohio-2705, ¶ 10, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 21.

**{¶35}** Finally, in this case the jury determined that Richcreek was acting under the influence of sudden passion or a fit of rage, brought on by serious provocation of the victim. There was clear testimony presented that there was a turbulent history between the brothers, including Anthony's ongoing relationship with Ashley, the mother of Richcreek's children. There was also clear testimony that there was a fight between the brothers just before Anthony was shot. Richcreek was already in a state where he had fired two bullets at a truck, and he was evidently upset over how Anthony was caring for Ashley. This could support a finding of a sudden passion or fit of rage by the jury.

**{¶36}** Based on all of the evidence presented, we cannot find that the jury clearly lost its way by convicting Richcreek of voluntary manslaughter. We also cannot find that the jury clearly lost its way by determining that Richcreek's actions were not in self-defense. For all of these reasons, Richcreek's first assignment of error is overruled.[1]

---

[1] Richcreek does not appear to challenge the firearm specification; however, even if he did challenge this issue on appeal, he testified himself that he carried and used a firearm in this matter.

*Second Assignment of Error*

**{¶37}** In his second assignment of error, Richcreek argues that when he was sentenced in this case the trial court did not properly weigh the principles and purposes of sentencing under R.C. 2929.11 or the seriousness and recidivism factors under R.C. 2929.12.

Standard of Review

**{¶38}** Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

Relevant Authority

**{¶39}** " 'The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than [a] minimum sentence[ ].' " *State v. Castle*, 2d Dist. Clark No. 2016-CA-16, 2016-Ohio-4974, ¶ 26, quoting *State v. King*, 2d Dist. Clark No. 2012-CA-25, 2013-Ohio-2021, ¶ 45; *State v. White*, 3d

Dist. Marion No. 9-19-32, 2020-Ohio-717, ¶ 8.  Nevertheless, when exercising its sentencing discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Kerns*, 3d Dist. Logan No. 8-18-05, 2018-Ohio-3838, ¶ 8, citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, ¶ 38.

{¶40} Revised Code 2929.11 provides that sentences for a felony shall be guided by the overriding purposes of felony sentencing: "to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A).  In order to comply with those purposes and principles, R.C. 2929.12 instructs a trial court to consider various factors set forth in the statute relating to the seriousness of the offender's conduct and to the likelihood of the offender's recidivism. R.C. 2929.12(A)-(E).

Analysis

{¶41} In this case, Richcreek was convicted of voluntary manslaughter in violation of R.C. 2903.03(A), a first degree felony.  Pursuant to R.C. 2929.14(A)(1)(a), the prison term for a first degree felony "shall be an indefinite prison term with a stated minimum term selected by the court of three, four, five, six, seven, eight, nine, ten, or eleven years and a maximum term that is determined

pursuant to section 2929.144 of the Revised Code[.]" Under R.C. 2929.144(B)(1), the maximum prison term for a qualifying felony of the first degree shall be equal to the "minimum term imposed * * * plus fifty per cent of that term." Here, Richcreek was sentenced to serve an indefinite prison term with a stated minimum of 8 years, and a maximum of 12 years. This prison term is within the appropriate statutory range and compliant with the relevant statutes, therefore it is presumptively valid.[2] *State v. Maggette*, 3d Dist. Seneca No. 13-16-06, 2016-Ohio-5554, ¶ 31.

{¶42} Moreover, at the sentencing hearing, the trial court explicitly stated that it considered the principles and purposes of sentencing under R.C. 2929.11 and that it had balanced the seriousness and recidivism factors under R.C. 2929.12. In fact, the trial court actually considered mitigating circumstances on the record. The trial court's findings were incorporated into its judgment entry.

{¶43} Importantly, "[a] trial court's statement that it considered the required statutory factors, without more, is sufficient to fulfill its obligations under the sentencing statutes." *Maggette*, 2016-Ohio-5554, at ¶ 32, citing *State v. Abrams*, 8th Dist. Cuyahoga No. 103786, 2016-Ohio-4570, citing *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 18. Thus not only was the sentence in this case

---

[2] Though not really contested, the one year mandatory prison term for the firearm specification is also compliant with the sentencing statute. *See* R.C. 2929.14(B)(1)(a)(iii).

presumptively valid, the trial court also indicated that it considered the appropriate statutes. Under these circumstances, we cannot find that Richcreek demonstrated that his sentence was clearly and convincingly contrary to law.

**{¶44}** Furthermore, to the extent that Richcreek seeks to have this Court modify his sentence, we emphasize that a recent decision of the Supreme Court of Ohio, *State v. Jones*, --- Ohio St.3d ---, 2020-Ohio-6729, forecloses Richcreek's argument.[3] In *Jones*, the court held that R.C. 2953.08(G)(2) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *Id.* at ¶ 39. In reaching this conclusion, the Court observed that while "R.C. 2953.08(G)(2)(a) permits an appellate court to modify or vacate a sentence if it clearly and convincingly finds that 'the record does not support the sentencing court's findings under' certain specified statutory provisions[,] * * * R.C. 2929.11 and 2929.12 are not among the statutory provisions listed in R.C. 2953.08(G)(2)(a)." *Id.* at ¶ 28. Moreover, the Court explained that "an appellate court's determination that the record does not support a sentence does not equate to a determination that the sentence is 'otherwise contrary to law' as that term is used

---

[3] Because *Jones* was decided after Richcreek submitted his initial appellate brief in this case, he did not have the opportunity to address its applicability. However, *Jones* "does not change the law" but instead "clarifies existing law and precedents." *State v. Roberts*, 5th Dist. Richland No. 2020 CA 0035, 2021-Ohio-90, ¶ 81, fn. 2. Therefore, we elect to apply *Jones* to the instant case without the benefit of supplemental briefing.

in R.C. 2953.08(G)(2)(b)." *Id.* at ¶ 32. Accordingly, "pursuant to *Jones*, an appellate court errs if it * * * modifies or vacates a sentence 'based on the lack of support in the record for the trial court's findings under R.C. 2929.11 and R.C. 2929.12.' " *State v. Dorsey*, 2d Dist. Montgomery No. 28747, 2021-Ohio-76, ¶ 17, quoting *Jones* at ¶ 29.

{¶45} Even if we were to agree with Richcreek that his sentence was not supported by the record under R.C. 2929.11 and 2929.12—to be clear, we do not— in light of the Supreme Court of Ohio's holding in *Jones*, we could not vacate or modify Richcreek's sentence on that basis. As discussed above, Richcreek's sentence is within the statutory range and it is clear that the trial court considered R.C. 2929.11 and 2929.12. Thus, Richcreek's sentence is not clearly and convincingly contrary to law, and it must therefore be affirmed. *See State v. Roberts*, 5th Dist. Richland No. 2020 CA 0035, 2021-Ohio-90, ¶ 103 (confirming that R.C. 2953.08(G)(2)(b) does not allow an appellate court to vacate or modify a sentence based on the court's view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12 and upholding the defendant's sentence because the trial court "complie[d] with applicable rules and sentencing statutes [and] [t]he sentence was within the statutory sentencing range"); *Dorsey* at ¶ 18-19 (determining that, after *Jones*, courts "simply must determine whether [sentences that are imposed solely after considering R.C. 2929.11 and 2929.12] are contrary to

-20-

law," which means assessing whether the sentence is within the statutory range for the offense and whether the trial court considered R.C. 2929.11 and 2929.12)[.] For all of these reasons, Richcreek's second assignment of error is overruled.

*Conclusion*

{¶46} For the foregoing reasons Richcreek's assignments of error are overruled and the judgment of the Paulding County Common Pleas Court is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**

**/jlr**