[Cite as *State v. Roberts*, 2021-Ohio-90.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  |  | JUDGES: |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Earle E. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2020 CA 0035 |
| AKILI ROBERTS | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:　　　Criminal appeal from the Richland County
　　　　　　　　　　　　　　　　　　　　　Court of Common Pleas, Case No. 2019-
　　　　　　　　　　　　　　　　　　　　　CR-0403

JUDGMENT:　　　　　　　　　　　　　Affirmed

DATE OF JUDGMENT ENTRY:　　　　January 15, 2021

APPEARANCES:

For Plaintiff-Appellee　　　　　　　　　For Defendant-Appellant

GARY BISHOP　　　　　　　　　　　　MEGAN PATITUCE
Richland County Prosecutor　　　　　　AARON SCHWARTZ
32 South Park Street　　　　　　　　　16855 Industrial Parkway
Mansfield, OH 44902　　　　　　　　　Strongsville,OH　44149

*Gwin, P.J.*

{¶1} Defendant-appellant Akili Roberts ["Roberts"] appeals his convictions and sentences after a jury trial in the Richland County Court of Common Pleas.

*Facts and Procedural History*

{¶2} Cuyahoga County Sheriff's Office Deputy Michael Twombly, and his K-9 Officer Ciga were at the Orange Avenue Post Office in Cleveland, Ohio working parcel drug interdiction by assignment. On February 7, 2019, Ciga alerted to a package. Before opening the package, Deputy Twombly applied for and received a federal search warrant. The parcel was photographed, opened, and searched. Inside, wrapped in cellophane, inside of a freezer bag, was a parcel wrapped up like a present. This parcel contained over 500 grams of cocaine. The parcel, the wrapping, and the contents were photographed. The package was closed, resealed, and turned over to the postal inspectors to prepare for delivery. A location device, a GPS and a transmitter, were attached to the package so as to alert law enforcement when the package was opened.

{¶3} On the afternoon of February 7, 2019, Sergeant Steve Blust and Detective Wayne Liggett of the Mansfield Police Department did an initial drive by of the intended address of the package, 222 Penn Avenue in Mansfield, Ohio for surveillance purposes. Roberts's vehicle, identified by its license plate, was parked in front of the house. A second drive-by was conducted by Sergeant Blust and a postal inspector on February 8, 2019. Sergeant Blust observed two black male subjects at the address sitting in a Grand Prix, a car that was registered to Roberts.

{¶4} On February 8, 2019, a controlled delivery to the address listed on the package, 222 Penn Avenue, in Mansfield, Ohio, was made by a postal inspector,

monitored by Sergeant Blust of METRICH. The package was left on the porch while law enforcement officers watched the house.  Officers soon saw Roberts's car. Roberts was driving and Herbert Taylor was in the passenger seat.

{¶5}  Taylor ran out of the car, grabbed the package, jumped back in the car, and the car attempted to speed away. The sensor warning from the box went off, which indicated that the box had been opened. The car was stopped by Detective Rahall and other law enforcement officers. Taylor was holding the package when the vehicle was stopped.  When the vehicle was searched, law enforcement found, in addition to the postal package containing the cocaine, a few cell phones. The contents of these phones were downloaded for information and analyzed by Detective Liggett.  On one phone, there was a message sent on the 7th of February, that read, "(S) end me the number; it's Penn, right?"

{¶6}  On April 30, 2019, a Confidential Informant (CI) made a controlled drug buy from Roberts. Before going to the location of the purchase, the CI made a controlled phone call, dialed by the officers, to one of the subjects of the investigation, Herbert Taylor. Detective Nicole Gearhart, assigned to METRICH, searched the CI to make sure she had no contraband on her person and then she fitted her with the transmitter recording device that was used during the transaction.  Before the CI left for the pre-arranged location, Detective Perry Wheeler searched her vehicle. He also issued her the control money, which had been photocopied to record serial numbers, for the buy. Then, the CI drove to 264 East First Street, Mansfield, Ohio, followed by law enforcement.

{¶7}  Officers could not watch the video of the controlled buy in real time; however, they could hear the audio in real time.  When the CI returned from the buy,

Detective Gearhart removed the recording device from her. The video recording from the CI showed the CI arriving at the house, the CI handing money to Roberts, who in turn can be heard on the tape giving the order for the drugs. When the CI left the house, she drove to the station, followed by law enforcement. When she arrived at the station, the recording device was removed. Detective Wheeler recovered the drugs and subsequently submitted them to the Crime Lab for analysis. The CI was not allowed to touch the equipment and the officers watched the video as it was being downloaded to verify the events of the buy and to corroborate what they were hearing with what was on the video. The CI was also debriefed, asked to tell the officers what happened from the time that she left until the time she returned. The CI in this case, Tara Sauer, tragically passed away prior to trial.

{¶8} On May 9, 2019, the same CI made another controlled drug buy from Roberts. Detective Gearhart again searched the CI when she arrived at the law enforcement office. She fitted the CI with the transmitter recording device, activated it before she left, and deactivated it and collected it when she returned. Detective Wheeler issued the buy money. Detective Gearhart downloaded the video burned it onto CD, and completed the integrity report on the equipment. Sergeant Joseph Soehnlen collected the drugs directly from the CI after the buy. Detective Wheeler took the drugs from Sergeant Soehnlen, packaged them, and submitted them to the Crime Lab for analysis.

{¶9} By May 10, 2019, arrest warrants for Roberts and Taylor were certified, signed and active. Detective Wheeler worked surveillance on one of two residences associated with the Roberts. On May 10, 2019, Roberts was driving the same vehicle that he had been driving on February 8, 2019, a gold Pontiac Grand Prix, the day of the

controlled delivery to the address on Penn. Detective Wheeler followed him in an unmarked vehicle. Roberts stopped his car, got out, and started walking towards Wheeler's unmarked vehicle. Detective Wheeler then stepped out of his vehicle, arrested Roberts, and transported him to the Richland County Jail. Roberts had a wallet, a social security card, and a cell phone. Inside of Roberts's wallet were bills with serial numbers that matched those used in the controlled buy on May 9, 2019. Also found on his person were keys, later identified as keys to a safe located in a house on East First Street.

{¶10} On May 10, 2019, in addition to the arrest warrant for Roberts, law enforcement also had a search warrant for a house on 264 East First Street. Present at that address was Roberts's older son Akili Roberts, Jr., Erica Carr, Mercedes Granados, Brianna Johnson, and Roberts's younger son, Akki. Mail addressed to Roberts was also found at that address.

{¶11} Sergeant Soehnlen and Detective Rahall started upstairs, where they first encountered Erica Carr as she left the bathroom, where she was attempting to flush small packets of drugs. Upstairs, in the northwest bedroom, was a safe. Access to that safe was gained from keys that had been found in Roberts's possession earlier that day when he was arrested. While Detective Soehnlen stayed upstairs, Special Agent Minichello brought Roberts's keys upstairs and used them to open the safe. Inside of the safe, police found wrapped up bags, a scale, a box of latex gloves or some type of surgical gloves. They also found a large number of small baggies that Sergeant Soehnlen testified were commonly used for packaging drugs. Also found on the nightstand was Inositol powder, a dietary supplement, which is used as a cutting agent for drugs.

{¶12} Neither the keys, nor the safe, were taken into evidence, so as not to cause any inconvenience to the residents. Law enforcement never found any other key that fit the safe in the house at 264 East First Street.

{¶13} On April 18, 2019, in Case No. 2019-CR-00339, Roberts was indicted on one count of Possession of Cocaine, in violation of R.C. 2925.11(A), a felony of the first degree, with a Forfeiture specification, a violation of R. C. 2941.1417(A).

{¶14} On June 7, 2019, in Case No. 2019-CR-0403, Roberts was indicted on a three-count indictment. Count One charged Roberts with Trafficking in a Fentanyl-related Compound, in violation of R.C. 2925.03(A)(1), a felony of the fourth degree. Count Two charged Roberts with Trafficking in Heroin, in violation of R.C. 2925.03(A)(1), a felony of the fourth degree. Count Three charged Roberts with Trafficking in Cocaine, in violation of R.C. 2925.03(A)(1), a felony of the fifth degree.

{¶15} On July 12, 2019, Case No. 2019-CR-0404, Roberts was indicted on one count of Trafficking in Heroin, in violation of R.C. 2925.03(A)(2)&(C)(6)(e), a felony of the second degree, with a Firearm specification, in violation of R.C. 2941.141, and with two Forfeiture specifications, in violation of R.C. 2941.1417, one count of Possession of Heroin, in violation of R.C. 2925.11(A)&(C)(6)(d), a felony of the second degree, with a Firearm specification, in violation of R.C. 2941.141, and with two Forfeiture specifications, in violation of R.C. 2941.1417, one count of Trafficking in Fentanyl-related Compound in violation of R.C. 2925.03(A)(2)&(C)(9)(e), a felony of the second degree, with a Firearm specification, in violation of R.C. 2941.141, and with two Forfeiture specifications, in violation of R.C. 2941.1417; one count of Possession of Fentanyl in violation of R.C. 2925.11(A)&(C)(11)(D), a felony of the second degree, with a Firearm specification, in

violation of R.C. 2941.141, and with two Forfeiture specifications, in violation of R.C. 2941.1417, one count of Aggravated Trafficking in Drugs in violation of R.C. 2925.03(A)(2)7(C)(1)(a), a felony of the fourth degree, with a Firearm specification, in violation of R.C. 2941.141, and with two Forfeiture specifications, in violation of R.C. 2941.1417, and Aggravated Possession of Drugs in violation of R.C. 2925.11(A)&(C)(1)(A), a felony of the fifth degree, with a Firearm specification, in violation of R.C. 2941.141, and with two Forfeiture specifications, in violation of R.C. 2941.1417.

{¶16} On October 23, 2019 the trial court, over defense objection, granted the state's motion for joinder, joining all three of the cases together for the purposes of trial. The three cases proceeded to jury trial on March 2, 2020.

{¶17} The jury found Roberts guilty of all three Counts in Case no. 2019-CR-0403, the jury found Roberts not guilty of the sole count in 2019-CR-0339 , and the jury found Roberts not guilty on all six counts in 2019-CR-0404.

{¶18} As to 2019-CR-0403, the Court sentenced Roberts to eighteen months each on Counts 1 and 2 and twelve months on Count 3, to be served consecutively, for an aggregate prison term of four years.

*Assignments of Error*

{¶19} Roberts raises five Assignments of Error,

{¶20} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING THE STATE'S MOTION TO JOIN THE TWO INDICTMENTS.

{¶21} "II. THE TRIAL COURT ERRED IN ADMITTING VIDEOS RECORDED BY A DECEASED CONFIDENTIAL INFORMANT IN VIOLATION OF MR. ROBERTS'S SIXTH AMENDMENT RIGHTS.

{¶22} "III. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING A MOTION FOR MISTRIAL MADE AS A RESULT OF PROSECUTORIAL MISCONDUCT.

{¶23} "IV. MR. ROBERTS'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶24} "V. THE TRIAL COURT ERRED IN SENTENCING MR. ROBERTS TO A FOUR-YEAR TERM OF INCARCERATION."

I.

{¶25} In his First Assignment of Error, Roberts argues the trial court's decision to grant the state's motion to join the three cases was an abuse of discretion.

**Standard of Appellate Review.**

{¶26} "Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged * * * are of the same or similar character * * *." Crim.R. 8(A). Crim.R. 8(A) also allows the joinder of offenses that "are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Permitting joinder "conserves resources by avoiding duplication inherent in multiple trials and minimizes the possibility of incongruous results that can occur in successive trials before different juries." *State v. Hamblin,* 37 Ohio St.3d 153, 158, 524 N.E.2d 476 (1988).

{¶27} "Notwithstanding the policy in favor of joinder," Crim.R. 14 permits a defendant to request severance of the counts in an indictment "on the grounds that he or she is prejudiced by the joinder of multiple offenses." *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 49. The defendant "has the burden of furnishing the

trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial." *State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981). But even if the equities appear to support severance, the state can overcome a defendant's claim of prejudicial joinder by showing either that (1) it could have introduced evidence of the joined offenses as other acts under Evid.R. 404(B) or (2) the "evidence of each crime joined at trial is simple and direct," *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990). *See, State v. Ford,* 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, ¶103.

{¶28} We review a trial court's ruling on a Crim.R. 14 motion for an abuse of discretion. *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 166; *Ford* at ¶ 103. A defendant who appeals the denial of relief bears a heavy burden:

> He must affirmatively demonstrate (1) that his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial.

*State v. Schaim*, 65 Ohio St.3d 51, 59, 600 N.E.2d 661 (1992); *Ford* at ¶106. An abuse of discretion exists where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice, or where the judgment reaches an end or purpose not justified by reason and the evidence. *Tennant v. Gallick,* 9th Dist. Summit No. 26827, 2014-Ohio-477, ¶35; *In re Guardianship of S .H.*, 9th Dist.

Medina No. 13CA0066–M, 2013–Ohio–4380, ¶ 9; *State v. Firouzmandi,* 5th Dist. Licking No. 2006–CA–41, 2006–Ohio–5823, ¶54.

**Issue for Appellate Review**: *Whether the trial court abused its discretion in joining the case for trial.*

{¶29} Roberts argues that beyond the base allegations of drugs, the facts in the three cases were distinct. One case involved alleged sales to an informant, one case involved the execution of a search warrant at a home, and the third case involved a co-defendant's pick-up of a box containing drugs.[Appellant's Brief at 4-5]. The state argues all of the cases are tied together. They take place within a short span of time between February and May, 2019. All three of the cases were investigated by the same law enforcement agency and officers: the METRICH (Metro-Richland County) Enforcement Unit. In two of the cases, Roberts is charged with trafficking and in the third, with possessing a large quantity of cocaine. The state argues the offenses "are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct," and were rightly joined. [Appellee's Brief at 7].

{¶30} Roberts fails to show that the trial court's judgment reaches an end or purpose not justified by reason and the evidence or that the reasons given by the court for its action are clearly untenable, legally incorrect, or amounted to a denial of justice and he therefore fails to establish an abuse of discretion.

{¶31} In the case at bar, the evidence concerning the mailing, delivery and pick-up of the box containing five hundred grams of cocaine and the evidence of the two controlled buys led to the issuance of the search warrant. The evidence of each of the

crimes was simple and direct. The jury was clearly capable of segregating the evidence of the multiple charges when, as in the present case, the evidence of each crime is uncomplicated. *See State v. Hamblin,* 37 Ohio St.3d 153, 159, 524 N.E.2d 476 (1988). The evidence did not confuse the jury and was not highly prejudicial. The jury in the case at bar found Roberts not guilty of all six charges and the attendant specifications, the most serious of the charges, in Case Number 2019 CR 0404, and also not guilty of possession of cocaine with its attendant specification in Case No. 2019 CR0339. The jury convicted Roberts only of the controlled buy charges that were recorded with both audio and video.

{¶32} We cannot conclude that Roberts was prejudiced by the joinder. We conclude that the trial court did not abuse its discretion in joining the offenses for trial.

{¶33} Roberts's First Assignment of Error is overruled.

II.

{¶34} In his Second Assignment of Error, Roberts contends that the trial court erred when it permitted the state to introduce the audio and video recordings of the undercover drug buys that took place on April 30, 2019 and May 9, 2019 into evidence. More specifically, Roberts argues that pursuant to the U.S. Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the taped statements should have been excluded by the trial court as they contained out-of-court statements made by a confidential informant who did not appear or testify at trial.

**Standard of Appellate Review**

{¶35} "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the

rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). "However, we review de novo evidentiary rulings that implicate the Confrontation Clause. *United States v. Henderson*, 626 F.3d 326, 333 (6th Cir. 2010)." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶97.

{¶36} We note that any error will be deemed harmless if it did not affect the accused's "substantial rights." Before constitutional error can be considered harmless, we must be able to "declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. State of Cal.*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

**Issue for Appellate Review:** *Whether the trial court violated Roberts's right to confrontation by allowing the state to introduce video and audio recordings made during the controlled drugs on April 30, 2019 and May 9, 2019.*

{¶37} The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."

{¶38} In *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)*,* the Supreme Court of the United States held that out-of-court statements that are testimonial are barred, under the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether the statements are deemed reliable by the trial court. The Court defined these "testimonial" statements to include "ex parte in-court testimony or its functional equivalent- that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used "prosecutorially" and "extrajudicial statements * * *

contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." 541 U.S. at 51-52.

{¶39} Thus as to "testimonial evidence," "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." 541 U.S. at 68. "To trigger a violation of the Confrontation Clause, an admitted statement must be testimonial in nature, and must be hearsay." *United States v. Deitz,* 577 F.3d 672, 683 (6th Cir.2009). A statement is testimonial where a reasonable person would anticipate that his or her statement would be used "against the accused in investigating and prosecuting the crime." *United States v. Cromer,* 389 F.3d 662, 675 (6th Cir. 2004). *See also State v. Stahl,* 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, at paragraph two of the syllabus.

{¶40} In the case at bar, we find that any statements made by the confidential informant on the recordings to be non-testimonial in nature, and thus, the Confrontation Clause does not bar them. The confidential informant made the statements to Roberts and his co-defendant who are not law-enforcement officers, and the statements "were not the result of any official examination." *State v. Nix,* 1st Dist. No. C-030696, 2004-Ohio-5502, ¶75.

{¶41} Roberts does not identify with specificity any statement contained on the recordings that he contends are objectionable and prejudicial.  It does not appear from the record that the state used or argued at trial that any statements made by the confidential informant implicated Roberts in the sale or possession of drugs, or that any

statements established the elements of the crimes for which Roberts was indicted. *See, United States v. Hearn,* 500 F.3d 479, 483-486(6th Cir. 2007).

**{¶42}** Further, "[t]he testimony at issue was offered to explain the subsequent investigative activities of the witnesses. It was not offered to prove the truth of the matter asserted. It is well established that extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed. *See United States v. Zamarripa* (C.A.8, 1976), 544 F.2d 978, 982, *certiorari denied* 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 566; *State v. Lopez* (1957), 182 Kan. 46, 51-2, 318 P.2d 662, 666. The testimony was properly admitted for this purpose." *State v. Thomas,* 61 Ohio St.2d 223, 232, 400 N.E.2d 401(1980).

**{¶43}** In the case at bar, the confidential informants statements are admissible as providing context for Roberts's statements and actions, not for the truth of the matter asserted. *See United States v. Sexton,* 119 Fed.Appx. 735, 743 (6th Cir.), *vacated on other grounds*, 2005 WL 6011238 (2005). Therefore, because the statements of the confidential informant are not hearsay, they fall outside of the scope of the Confrontation Clause and the recorded events of April 30, 2019 and May 9, 2019 were properly admitted at Roberts's trial. *State v. Suber,* 5th Dist. Licking No. 16 CA 14, 2016-Ohio-7497.

**{¶44}** Roberts's Second Assignment of Error is overruled.

III.

**{¶45}** In his Third Assignment of Error, Roberts maintains that the trial court abused its discretion in denying his motion for a mistrial after the state's misconduct.

**Standard of Appellate Review.**

{¶46} "Mistrials need to be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991). The standard of review for evaluating a trial court's decision to grant or deny a mistrial is abuse of discretion. *State v. Maurer*, 15 Ohio St.3d 239, 473 N.E.2d 768 (1984). In reviewing a claim that a mistrial should have been granted, the Ohio Supreme Court has noted "[t]his court has instead adopted an approach which grants great deference to the trial court's discretion in this area, in recognition of the fact that the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial." *State v. Shaffer*, 5th Dist. Richland No. 2003-CA-0108, 2004-Ohio-3717, ¶18 *quoting* [State *v.]* Widner [68 Ohio St.2d 188, 429 N.E.2d 1065(1981)]. *See, also,* *Wade v. Hunter*, 336 U.S. 684, 687, 69 S.Ct. 834, 836, 93 L.Ed. 974(1949).

{¶47} An abuse of discretion can be found where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice, or where the judgment reaches an end or purpose not justified by reason and the evidence. *Tennant v. Gallick*, 9th Dist. Summit No. 26827, 2014-Ohio-477, ¶35; *In re Guardianship of S.H.,* 9th Dist. Medina No. 13CA0066–M, 2013–Ohio–4380, ¶ 9; *State v. Firouzmandi*, 5th Dist. Licking No. 2006–CA–41, 2006–Ohio–5823, ¶54

**Issue for Appellate Review:** *Whether the trial court abused its discretion by denying Roberts's motion for a mistrial.*

{¶48} In this case, the trial court allowed the jurors to submit questions. At the conclusions of Wayne Liggett's testimony, a juror submitted a question, but the defense, at sidebar, objected to the question. 4T at. 480-481[1]. The trial court sustained the

---

[1] For clarity, the jury trial transcript will be referred to as, "__T.__," signifying the volume and the page number.

objection to which the state replied: "There's a defense objection? Note it's a defense objection." 4T. at 482. The parties stepped back from the bench, and the trial court advised the jury that it would not ask the question. Specifically, the trial court stated: "Ladies and gentlemen, I can't ask the witness this particular question. Not that it wasn't relevant or anything, but for evidentiary ruling reasons. With that, we're going to let Detective Liggett step down. He's done. And we're going to go ahead and do lunch." 4T. at 482. The state then replied; "I didn't know if the Court was going to sustain the defense's objection." 4T. at 482. After the jury had been excused, the defense lodged an objection to the state's statement and moved for a mistrial. 4T. at 483-88.

{¶49} Crim. R. 52(A) defines harmless error, "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Before constitutional error can be considered harmless, we must be able to "declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705(1967). Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal. *State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623(1976), paragraph three of the syllabus, *vacated on other grounds in Lytle v. Ohio,* 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154(1978).

{¶50} In the case at bar, the jury acquitted Roberts of the six most serious charges and specifications and acquitted Roberts of seven of the ten indicted charges against Roberts. Accordingly, we find there is no reasonable possibility that comments of the prosecutor contributed to Roberts's conviction.

{¶51} The trial court did not abuse its discretion in denying Roberts's motion for a mistrial.

{¶52} Roberts's Third Assignment of Error is overruled.

IV.

{¶53} In his Fourth Assignment of Error, Roberts maintains that his convictions are against the manifest weight of the evidence. Although he phrases his assignment of error in terms of "manifest weight," Roberts nonetheless contends, "Assuming *arguendo* that the videos were admissible, the evidence was still insufficient to establish Mr. Roberts's guilt beyond a reasonable doubt…. There is no evidence that Mr. Roberts engaged in a drug transaction." [Appellant's Brief at 11].

**Standard of Appellate Review– Sufficiency of the Evidence.**

{¶54} The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. __, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶55} When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574

N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997*; *Walker*, at ¶30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney*, 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, 'if believed, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus; *Walker* at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

**Issue for Appellate Review**: *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind of Roberts's guilt on each element of the crimes for which he was convicted beyond a reasonable doubt.*

{¶56} R.C. 2925.03(A) sets forth the essential elements of trafficking in drugs: "No person shall knowingly sell or offer to sell a controlled substance."

{¶57} In Case Number 2019 CR 0403 Roberts was charged with knowingly selling or offering to sell a fentanyl related substance on April 30, 2019 [Count 1], heroin on May

9, 2019 [Count 2], and cocaine on May 9, 2019 [Count 3]. There is no dispute as to either the identity or quantity of the drug involved in each count.

{¶58} Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Huff*, 145 Ohio App.3d 555, 563, 763 N.E.2d 695 (1st Dist. 2001) (Footnote omitted.) Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." *State v. McDaniel,* 2nd Dist. Montgomery No. 16221, 1998 WL 214606 (May 1, 1998), *citing State v. Elliott*, 104 Ohio App.3d 812, 663 N.E.2d 412 (10th Dist. 1995).

{¶59} In the case at bar, the jury was instructed on complicity. 4T. at 637. R.C. 2923.03(A)(2) sets forth the elements for complicity and provides, in relevant part:

> No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
>
> * * *
>
> (2) Aid or abet another in committing the offense;
>
> * * *
>
> (B) It is no defense to a charge under this section that no person with whom the accused was in complicity has been convicted as a principal offender.
>
> (C) No person shall be convicted of complicity under this section unless an offense is actually committed, but a person may be convicted of complicity in an attempt to commit an offense in violation of section 2923.02 of the Revised Code.

* * *

{¶60} It is true that a person's mere association with a principle offender is not enough to sustain a conviction based on aiding and abetting. *State v. Sims*, 10 Ohio App.3d 56, 58, 460 N.E.2d 672, 674-675 (8th Dist. 1983). In order to constitute aiding and abetting, the accused must have taken some role in causing the commission of the offense. Id.   With respect to the requirements for a conviction for complicity by aiding and abetting, the Supreme Court of Ohio has stated,

> To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime.

*State v. Johnson*, 93 Ohio St.3d 240, 2001–Ohio–187, 749 N.E.2d 749, at syllabus.

{¶61} Aiding and abetting may be shown by both direct and circumstantial evidence, and participation may be inferred from presence, companionship, and conduct before and after the offense is committed.  *State v. Cartellone*, 3 Ohio App.3d 145, 150, 444 N.E.2d 68, (8th Dist. 1981), *citing State v. Pruett*, 28 Ohio App.2d 29, 34, 273 N.E.2d 884 (4th Dist. 1971); *See also, State v. Mendoza*, 137 Ohio App.3d 336, 342, 738 N.E.2d 822(3rd Dist. 2000), *quoting State v. Stepp*, 117 Ohio App.3d 561, 568–569, 690 N.E.2d 1342(4th Dist. 1997).

{¶62}  Aiding and abetting may also be established by overt acts of assistance such as driving a getaway car or serving as a lookout. *State v. Cartellone*, 3 Ohio App.3d

at 150, 444 N.E.2d 68. *See also, State v. Trocodaro*, 36 Ohio App.2d 1, 301 N.E.2d 898 (10th Dist. 1973); *State v. Lett*, 160 Ohio App.3d 46, 52, 2005–Ohio–1308, 825 N.E.2d 1158, 1163 (8th Dist.); *State v. Polite,* 5th Dist. Stark No. 2017 CA 00129, 2018-Ohio-1372, ¶56.

{¶63} The events of April 30, 2019 and May 9, 2019 were controlled buys that were recorded in real time by the confidential informant. State's Exhibit 2 and State's Exhibit 3; 2T. at 318; 340; 344 3T. at 578.  Roberts is seen in both videos. 3T. at 339; 344; 388.

{¶64} On April 30, 2019, Roberts is seen on the couch with a significant number of dollar bills in in hands. Money was handed to Roberts by the confidential informant. 2T. at 391. The confidential informant is seen in the basement while the codefendant weighs and packages the drugs.  He hands the drugs to the confidential informant in the living room.

{¶65} On May 9, 2019, the confidential informant is seen entering the vehicle and driving to the residence.  The co-defendant answers the door.  The confidential informant waits in the living room. Both the co-defendant and Roberts return to the living room.  The confidential informant can be heard to say, "You gonna do me good?" It appears that Roberts hugs the confidential informant. The confidential informant leaves the residence and drives back to MERTECH.

{¶66} Evidence was presented during Roberts's jury trial that the confidential informant and the vehicle were searched both before and after returning on April 30, 2019 and May 9, 2019. 2T. at 274-276; 317-319; 3T. at 494-496.  The confidential informant was fitted with the transmitter/recording device. 3T. at 494-496. The confidential informant

was provided with buy money that had been photocopied for the purpose of later identifying it. 2T. at 275; 319. Law enforcement officers followed the confidential informant to the house and back to MERTECH. 2T. at 275-276.  Law enforcement officers took possession of the drugs and the recording device, and once again searched her and her vehicle. 2T. at 276; 319.

{¶67}  Roberts had in his wallet at the time of his arrest on May 10, 2019 ninety dollars of the one hundred eighty dollar buy money used by the confidential informant to purchase the drugs on May 9, 2019. 2T. at 355. The drugs purchased by the confidential informant were submitted to the laboratory. The video was downloaded while being watched and burned to disks. 3T. at 495-496.  An integrity report was run to establish the video had not been altered. 3T. at 495.

{¶68}  If the state relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492(1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, *80 Ohio St.3d 89, 684 N.E.2d 668(1997).* "Circumstantial evidence and direct evidence inherently possess the same probative value [.]" *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. Furthermore, "[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." *Jenks*, 61 Ohio St.3d at 272, 574 N.E.2d 492. While inferences cannot be based on inferences, a number of conclusions can result

from the same set of facts. *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293(1990), citing, *Hurt v. Charles J. Rogers Transp. Co*, 164 Ohio St. 329, 331, 130 N.E.2d 820(1955). Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. *Lott,* 51 Ohio St.3d at 168, 555 N.E.2d 293, citing *Hurt,* 164 Ohio St. at 331, 130 N.E.2d 820.

{¶69} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Roberts aided and abetted in knowingly selling or offering to sell controlled substances as alleged in Case Number 19 CR 403, Counts 1, 2 and 3. We hold, therefore, that the state met its burden of production regarding the element of trafficking in a fentanyl related substance, heroin and cocaine, and, accordingly, there was sufficient evidence to support Roberts's convictions.

**Standard of Appellate Review – Manifest Weight.**

{¶70} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355*; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

* * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶71} The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there exists two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

{¶72} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost

its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

**Issue for Appellate Review**: *Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.*

{¶73} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional*

*amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

{¶74} In the case at bar, the jury heard the witnesses and viewed the evidence. The jury saw the witnesses subject to cross-examination. The jury heard Roberts's attorney's arguments and explanations about the evidence and his actions. Further, the jury was able to view the events in real-time through the body cameras and pictures from the officers involved. The jury found Roberts not guilty of all six counts and specifications in Case Number 19-CR-404 and one count in Case Number 19-CR-399. Thus, a rational basis exists in the record for the jury's decision.

{¶75} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the foregoing and the entire record in this matter we find Roberts's convictions are not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Roberts's guilt. The jury neither lost their way nor created a miscarriage of justice in convicting Roberts of the offenses.

{¶76} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which Roberts was convicted.

{¶77} Roberts's Fourth Assignment of Error is overruled.

V.

{¶78} In his Fifth Assignment of Error, Roberts argues first that the sentences imposed by the trial court is inconsistent with the purposes of felony sentencing, and further that the imposition of consecutive sentences was not supported by the record.

**Standard of Appellate Review.**

{¶79} We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016–Ohio–1002, 59 N.E.3d 1231, ¶22; *State v. Howell*, 5th Dist. Stark No. 2015CA00004, 2015-Ohio-4049, ¶31. R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. *See, also, State v. Bonnell*, 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.2d 659, ¶28.

{¶80} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118(1954), paragraph three of the syllabus. *See also, In re Adoption of Holcomb,* 18 Ohio St.3d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross*, 161 Ohio St. at 477 120 N.E.2d 118.

{¶81} Recently, the Ohio Supreme Court reviewed the issue of "whether a sentence is "contrary to law" under R.C. 2953.08(G)(2)(b) when an appellate court finds that the record does not support a sentence with respect to R.C. 2929.11 and 2929.12."

*State v. Jones,* Oh. Sup. Ct. No. 2018-0444, 2020-Ohio-6729, 2020 WL 7409669(Dec. 18, 2020).[2]  A plurality of the Court in *Jones* found,

> Nothing in   R.C.  2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and   2929.12. In particular,   R.C. 2953.08(G)(2) does not permit an appellate court to conduct a freestanding inquiry like the independent sentence evaluation this court must conduct under  R.C. 2929.05(A) when reviewing a death penalty-sentence. See *State v. Hundley*, ⸺ Ohio St.3d ⸺⸺, 2020-Ohio-3775, ⸺ N.E.3d —, ¶ 128 (recognizing that R.C. 2929.05(A) requires de novo review of findings and other issues within its scope).

2020-Ohio-6729, 2020 WL 7409669, ¶ 42. The Court in *Jones* noted that,

> R.C. 2953.08(G)(2)(a) permits an appellate court to modify or vacate a sentence if it clearly and convincingly finds that "the record does not support the sentencing court's findings under" certain specified statutory provisions. But R.C. 2929.11 and 2929.12 are not among the statutory provisions listed in R.C. 2953.08(G)(2)(a). Only R.C. 2929.13(B) and (D), 2929.14(B)(2)(e) and (C)(4), and 2929.20(I) are specified.

2020-Ohio-6729, 2020 WL 7409669, ¶ 28. The plurality concluded,

---

[2] We note that *Jones* was decided after briefs were filed in the case at bar.  However, *Jones* does not change the law; rather, *Jones* simply clarifies existing law and precedents.

R.C. 2953.08(G)(2)(b) therefore does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12. 2020-Ohio-6729, 2020 WL 7409669, ¶39. The Court clarified,

The statements in *Marcum* at ¶ 23 suggesting that it would be "fully consistent" with R.C. 2953.08(G) for an appellate court to modify or vacate a sentence when the record does not support the sentence under R.C. 2929.11 or 2929.12 were made only in passing and were not essential to this court's legal holding. The statements are therefore dicta.

2020-Ohio-6729, 2020 WL 7409669, ¶ 27.

**Issue for Appellate Review:** *Whether the record clearly and convincing does not support Roberts's sentence under* 2929.13(B) and (D), 2929.14(B)(2)(e) and (C)(4), and 2929.20(I).

**R.C. 2929.13(B).**

{¶82} R.C. 2929.13(B) applies to one convicted of a fourth or fifth degree felony. Roberts was convicted of two felonies of the fourth degree and one felony of the fifth degree. In relevant part the statute provides,

(B)(1)(a) Except as provided in division (B)(1)(b) of this section, if an offender is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense, the court shall sentence the offender to a community control sanction or combination of community control sanctions if all of the following apply:

(i) *The offender previously has not been convicted of or pleaded guilty to a felony offense.*

(ii) The most serious charge against the offender at the time of sentencing is a felony of the fourth or fifth degree.

(iii) If the court made a request of the department of rehabilitation and correction pursuant to division (B)(1)(c) of this section, the department, within the forty-five-day period specified in that division, provided the court with the names of, contact information for, and program details of one or more community control sanctions that are available for persons sentenced by the court.

Emphasis added. In addition, R.C. 2929.13(B)(1)(b)(ix) expressly recognizes a trial court's "discretion to impose a prison term" on a defendant who is found guilty of a fifth-degree felony and "previously had served * * * a prison term." *See State v. Lawson*, 2018-Ohio-1532, 111 N.E.3d 98, ¶ 16 (2nd Dist.), *citing State v. Robinson*, 2nd Dist. Champaign No. 2012-CA-17, 2012-Ohio-4976, ¶ 22, and *State v. Parker*, 8th Dist. Cuyahoga No. 104610, 2017-Ohio-4294, ¶ 6-10; *See also, State v. Chatterton,* 2nd Dist. Miami No. 2020-CA-2, 2020-Ohio-5350, ¶5. Finally, R.C. 2929.13(B)(1)(b)(v)(i)(i)(i) provides a trial court discretion to impose a prison term on a defendant who is found guilty of a fourth or fifth degree felony if the court finds that the offender committed the offense for hire or as part of an organized criminal activity.

{¶83} Roberts has two prior felony convictions. 5T. at 742. The legislature did not impose a time limit upon the prior felony convictions, unlike R.C. 2929.13(B)(1)(a)(iii) which provides, "(iii) The offender previously has not been convicted of or pleaded guilty

to a *misdemeanor offense of violence* that the offender *committed within two years prior to the offense for which sentence is being imposed.*" Emphasis added.

{¶84} Furthermore, Roberts's sentences were within the statutory sentencing range and therefore there is nothing to indicate that the sentence is contrary to law.

**R.C. 2929.13(C).**

{¶85} R.C. 2929.13(C) applies to one convicted of a third degree felony. This provision therefore does not apply in Roberts's case.

**R.C. 2929.13(D).**

{¶86} R.C. 2929.13(D) (1) applies to one convicted of a felony of the first or second degree, for a felony drug offense that is a violation of any provision of Chapter 2925., 3719., or 4729. of the Revised Code for which a presumption in favor of a prison term is specified as being applicable, and for a violation of division (A)(4) or (B) of section 2907.05 of the Revised Code for which a presumption in favor of a prison term is specified as being applicable.

{¶87} Roberts was not convicted of a felony of the first or second degree. Accordingly, R.C. 2929.13(D) does not apply to Roberts's case.

**R.C. 2929.14 (B)(2)(e).**

{¶88} R.C. 2929.14(B)(2)(e) concerns additional prison sentences that a trial court can impose upon a defendant under specified circumstances. Roberts was not given an additional prison sentence.

**R.C. 2929.14 (C)(4) Consecutive Sentences.**

{¶89} R.C. 2929.14(C)(4) concerns the imposition of consecutive sentences.

{¶90}   In Ohio, there is a statutory presumption in favor of concurrent sentences for most felony offenses.  R.C. 2929.41(A). The trial court may overcome this presumption by making the statutory, enumerated findings set forth in R.C. 2929.14(C) (4).  *State v. Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 23. This statute requires the trial court to undertake a three-part analysis.   *State v. Alexander*, 1st Dist. Hamilton Nos. C–110828 and   C–110829, 2012-Ohio-3349, 2012 WL 3055158, ¶ 15.

{¶91}   R.C. 2929.14(C)(4) provides,

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶92} Thus, in order for a trial court to impose consecutive sentences the court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender. The court must also find that consecutive sentences are not disproportionate to the offender's conduct and to the danger the offender poses to the public. Finally, the court must make at least one of three additional findings, which include that (a) the offender committed one or more of the offenses while awaiting trial or sentencing, while under a sanction imposed under R.C. 2929.16, 2929.17, or 2929.18, or while under post-release control for a prior offense; (b) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct would adequately reflect the seriousness of the offender's conduct; or (c) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. See, *State v. White,* 5th Dist. Perry No. 12-CA-00018, 2013-Ohio-2058, ¶ 36.

{¶93} In *State v. Bonnell,* 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.2d 659, syllabus, the Supreme Court of Ohio stated that:

In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the

sentencing hearing and incorporate its findings into its sentencing entry, but

it has no obligation to state reasons to support its findings.

{¶94}   Furthermore, the sentencing court is not required to recite "a word-for-word recitation of the language of the statute." *Bonnell,* ¶ 29. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." Id. A failure to make the findings required by R.C. 2929.14(C)(4) renders a consecutive sentence contrary to law. *Bonnell,* ¶ 34. The findings required by R.C. 2929.14(C)(4) must be made at the sentencing hearing and included in the sentencing entry. Id. at the syllabus. However, a trial court's inadvertent failure to incorporate the statutory findings in the sentencing entry after properly making those findings at the sentencing hearing does not render the sentence contrary to law; rather, such a clerical mistake may be corrected by the court through a *nunc pro tunc* entry to reflect what actually occurred in open court. *Bonnell*, ¶ 30.

{¶95}   In this case, the record does support a conclusion that the trial court made all of the findings required by  R.C. 2929.14(C)(4) at the time it imposed consecutive sentences.

**R.C. 2929.14(C)(4): [T]he court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.**

{¶96}   The trial court considered this factor. 5T. at 752-753.

**R.C. 2929.14(C)(4)(a): The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.**

{¶97} This provision does not apply to Roberts's case.

**R.C. 2929.14(C)(4)(b): At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.**

{¶98} The trial court considered this factor. 5T. at 752-753.

**R.C. 2929.14(C)(4)(c): The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.**

{¶99} The trial court considered this factor. 5T. at 752-753.

**R.C. 2929.20.**

{¶100} R.C. 2929.20 (I) is inapplicable, as Roberts was not applying to the court for judicial release.

{¶101} The fact that Roberts received a different sentence from his co-defendant does not in and of itself establish that Roberts was punished for going to trial. The record precludes meaningful comparison of Roberts's sentence to that of his co-defendant. We have neither the pre-sentence investigation report nor the transcript concerning the trial

court's sentencing of the co-defendant. The record, such as it is, indicates that the co-defendant entered a negotiated guilty plea to one count. 5T. at 754.

{¶102} In *State v. Hill*, 70 Ohio St.3d 25, 635 N.E.2d 1248(1994), the defendant was convicted of complicity to trafficking in marijuana, and sentenced to one year in prison and further ordered to forfeit his apartment complex. His co-defendant received probation instead of a prison sentence. Id. at 29, 635 N.E.2d at 1252. On appeal, he argued that the trial court abused its discretion by giving him a harsher sentence than was given his co-defendant. Id. The Ohio Supreme Court observed,

> There is no question that on its face the sentence received by appellant, when compared to Newbauer's punishment, is disproportionate. Given the fact that Newbauer received probation, appellant's one-year prison sentence does appear to be harsh. However, as a general rule, an appellate court will not review a trial court's exercise of discretion in sentencing when the sentence is authorized by statute and is within the statutory limits. *See, generally, Toledo v. Reasonover* (1965), 5 Ohio St.2d 22, 24, 34 O.O.2d 13, 14, 213 N.E.2d 179, 180-181. *See, also, State v. Cassidy* (1984), 21 Ohio App.3d 100, 102, 21 OBR 107, 108-109, 487 N.E.2d 322, 323; *State v. Burge* (1992), 82 Ohio App.3d 244, 249, 611 N.E.2d 866, 869; and *State v. Grigsby* (1992), 80 Ohio App.3d 291, 302, 609 N.E.2d 183, 190.

70 Ohio St.3d at 29, 1994-Ohio-2, 635 N.E.2d 1248. Roberts cites no precedent, or any other authority, for reversal of an otherwise valid sentence on the basis that more culpable co-defendants were not punished more severely. There is no requirement that co-

defendant's receive equal sentences. *State v. Lloyd*, 11th Dist. Lake No. 2002-L-069, 2003-Ohio-6417 at ¶ 21; *United State v. Frye*, 831 F.2d 664, 667(6th Cir. 1987). Each defendant is different and nothing prohibits a trial court from imposing two different sentences upon individuals convicted of similar crimes. *State v. Aguirre*, 4th Dist. Gallia No. 03CA5, 2003-Ohio-4909, ¶ 50. In this case, there is nothing in the record to show that the difference in Roberts's sentence from that of his co-defendant was the result of anything other than the individualized factors that were applied to Roberts. *State v. Beasley,* 8th Dist. Cuyahoga No. 82884, 2004-Ohio-988, ¶ 23.

{¶103} We conclude that the trial court did not commit error when it sentenced Roberts to a sentence that differed from his co-defendant. Upon review, we find that the trial court's sentencing on the charges complies with applicable rules and sentencing statutes. The sentence was within the statutory sentencing range. R.C. 2953.08(G)(2)(b) does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12. *State v. Jones,* Oh. Sup. Ct. No. 2018-0444, 2020-Ohio-6729, 2020 WL 7409669(Dec. 18, 2020), ¶39.

{¶104} Roberts's Fifth Assignment of Error is overruled.

{¶105} The judgment of the Richland County Court of Common Pleas is affirmed.


By Gwin, P.J.,

Wise, John, J., and

Wise, Earle E., J., concur